UNITED STATES of America, Plaintiff–Appellee,

v.

Jemeker Mosley THOMPSON, Defendant–Appellant.

No. 94–1979.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1997.

Decided Oct. 15, 1997.

Robert Lee Garrison (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Howard B. Levy (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and MANION and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Jemeker Mosley Thompson and 12 others were indicted on a charge of conspiracy to distribute cocaine and various counts of money laundering. Thompson was tried alone, and a jury found her guilty on all counts. She was sentenced to concurrent terms of 180 months on each count of conviction (counts 1, 3, 4, 5, 6, and 7 of the indictment). On this appeal she challenges the sufficiency of the evidence supporting her conviction on all counts, and she argues that the district judge erroneously jacked up her sentencing range 2 levels upon a faulty finding of obstruction of justice. She also challenges the failure of the district court to give her a downward departure for being a minimal player in the conspiracy. Finally, she says the district judge did not adequately support his decision to place her at the high end of the applicable sentencing guideline range.

The indictment alleged a conspiracy to distribute cocaine in Alton, Illinois, between November 30, 1989, and August 22, 1991. Thompson, who lived in Los Angeles, supplied Percy Bratton, a musician who lived in Alton, with at least 8 kilograms of cocaine during the course of the conspiracy. Bratton, known in the music biz as "Cheez," paid $25,000 per kilo, but the deliveries were "fronted," that is, given to him on credit. Bratton sold the cocaine in Alton through a group of a half dozen distributors. On one occasion, Thompson traveled to Alton and personally received $100,000 in cash from Bratton. On another occasion she received $25,000 from Bratton and then concealed the loot in a girdle for her return flight back to L.A. from Alton. All the cash, of course, came from selling cocaine.

Bratton also frequently wired drug money from Alton to Thompson in Los Angeles. A total of at least $40,000 was wired during the time the indictment says the conspiracy was alive and kicking. During the trial, Bratton (who turned on Thompson and testified for the government) identified several money transfer documents representing wire transactions he had with Thompson. Bratton also identified money transfer documents representing transfers from one of his underlings, Robert Gaston, to Thompson. These money transfers formed the basis of the money laundering charges in the indictment. Bratton testified at the trial that the money wired to Thompson came from selling cocaine. In testimony that the jury obviously rejected, Thompson said she knew Bratton only as a musician, and that although he was her main squeeze (they lived together for a time and, according to Thompson, they had sex every day) she didn't know he was a drug dealer. She said she didn't give cocaine to Bratton and that Bratton never gave her cash as payment for drugs. She also said, of course, that she never stuffed wads of bills in a girdle and that none of the money transfers to her from Bratton or Gaston were for drug deals.

An attempt to overturn a conviction based on insufficiency of the evidence always faces an uphill climb. Thompson's argument doesn't even move her away from the foot of the hill. Her argument, essentially, is that if Bratton is believed, it only proves a buyer-seller agreement and not that she was a member of a larger conspiracy with him to distribute drugs. This argument might be

fine if she was sending Bratton only a line or two of cocaine every once in a while, but here she was sending massive quantities of dope on credit. Because there was no evidence that Bratton was the kind of musician who had tunes on the Billboard Top 40, it is reasonable to assume that Thompson had to know Bratton was going to turn around and sell the cocaine in order to get cash to pay his bills to her. Bratton said this was the case and the jury had every right to believe him. The insufficiency of the evidence argument, on this record, is shallow and we reject it.

■ A 2–level enhancement of a defendant's offense level under the sentencing guidelines is appropriate if a defendant willfully obstructs or attempts to obstruct the administration of justice. U.S.S.G. § 3C1.1. Perjury during a trial by a defendant is, of course, one sure way to trigger the enhancement.

We are befuddled by Thompson's argument on this point. She says the district judge failed to "find on the record that the defendant willfully obstructed or attempted to obstruct justice." She also says the judge failed to find that any obstruction "was material." Hogwash. The judge clearly found that Thompson tried to peddle a fish story to the jury. The judge said: I recall the defendant's testimony very well.

I recall that the defendant was clearly not a credible witness. I recall clearly that the defendant lied on the stand under oath. I recall that the defendant testified that Percy Bratton never held himself out as doing anything other than being in the music profession, that she did not know that Percy Bratton dealt in drugs, that she didn't know Eric Johnson, that she didn't get any phone calls from Eric Johnson, that she never asked Nina Bratton to transport money back from—to transport cocaine back to Alton or money to Los Angeles, that she testified that she had never asked her secretary to carry cocaine to Alton, that she testified that she never stuffed money in her girdle or threatened Percy Bratton or that she had ever spoken to Rabbit McTizic or left threatening messages on the telephone.
All of that testimony was more than adequately refuted by the testimony of a num-

ber of witnesses. I am not going to recite them because it would take us some time to get through the entire hearing if I did that. But for example, Louis Bratton testified about the fact that he was sent by Percy Bratton to buy a girdle and to take it to the defendant at the Holiday Inn where she went in the bathroom, put it on, came out and stuffed it full of money. Then Mr. Bratton took her to the airport. Well Nina Bratton testified about her relationship with Eric Johnson and with the defendant, as did Meyna Bratton, and so on. I think if anything is warranted in this case, the 2 level increase enhancement for obstruction of justice is warranted.

Does anything more have to be said on this point? We don't think so.

■ Thompson's next argument, under U.S.S.G. § 3B1.2, lacks merit but not chutzpah. She says that although the district court found she was not entitled to a 2–point reduction for being a minor participant in the conspiracy, she should be resentenced because the judge didn't consider her alternative argument that she should get a 4–level reduction for having played only a minimal role in the crime. Come again? That's like saying that a play that didn't gain a yard should have gone for a touchdown.

■ Lastly, we reject Thompson's final claim that the district judge abused his discretion by sentencing her at the upper end of her guideline range. While we need not rehash what we have already said, Thompson was clearly a player in a conspiracy that dumped substantial amounts of cocaine onto the streets of Alton. She was able to front multi-kilo deliveries, she threatened Bratton at one point when payments were slow, and she recruited couriers on several occasions. The record supports her placement at the top of her guideline range.

AFFIRMED.